The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing parties have shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with some minor technical modifications. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. The carrier on the risk was Travelers Insurance Company.
4. Plaintiff suffered a compensable injury by accident arising out of and in the course and scope of his employment with defendant-employer on June 28, 1993.
5. The parties signed a Form 21 which was approved by the Industrial Commission on November 16, 1993.
6. After the initial hearing, the parties stipulated to the following medical records:
a. Dr. Dorn (1 p.)
b. Raintree Clinic — Dr. Crummie (6 pp.)
c. Two letters from Dr. Crummie (3 pp.)
d. Records of Dr. Chapman — Miller Clinic (6 pp.)
e. Records of Dr. Dorn (12 pp.)
f. Records from Pardee Memorial Hospital (1 p.)
g. Records of Tamara Hite — ConServCo (39 pp.)
h. Rehab Center (28 pp.)
 i. Functional Capacity Examination — Gaston Memorial Hospital (10 pp.)
j. Records from Cleveland Memorial Hospital (3 pp.)
k. Record from Charlotte Radiology (1 p.)
l. Record from Industrial Commission files (4 pp.)
m. Record from Heritage Insurance (1 p.)
7. The issues in this case concern:
 a. Did plaintiff's decision to discontinue work with Bullek constitute a justifiable refusal to accept suitable employment?
 b. Is plaintiff eligible for continuing medical treatment including treatment for his acute psychological problems?
 c. Is plaintiff entitled to temporary total disability compensation or other benefits?
* * * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner, with minor technical modifications, as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. Plaintiff is a male, born August 22, 1954, and at the time of the initial hearing was forty-one years old. Plaintiff has been married to his second spouse for seven years. He has an adult son from his first marriage. Plaintiff is a high school graduate who has six years of mechanical training with the Marine Corps. Plaintiff also had employment taking cars to exhibitions, painting outboard motor housings and running his own body repair shop. Plaintiff took carpentry courses at a community college for a year and also had extensive work experience as a carpenter.
2. Plaintiff went to work as a painter and body repair man for Tri-Star Motorsports on April 27, 1993.
3. On June 28, 1993, plaintiff sustained an injury by accident to his lower back and groin when removing a 150 pound dolly from a wall hanger. The dolly weighed 150 pounds, and when he pulled it off the wall, the weight of it forced him backward into an awkward position. His legs were forced apart and he felt a strain in his groin and later began developing lower back pain. Plaintiff felt immediate pain in his left groin and had a numb feeling in his back and waist. However, he continued to work until midnight.
4. Plaintiff presented to the emergency room the following day. He was examined by a physician there and was kept out of work for four days and given Anaprox. This treatment took place at Pardee Memorial Hospital's Emergency Room in Hendersonville. The two pages of records from Margaret R. Pardee Memorial Hospital contain a note indicating that plaintiff could return to work on July 3, 1993. There is also information signed by plaintiff indicating the follow-up physician assigned is Dr. Berger. The note specifically states that plaintiff was complaining of low back pain when he presented to the emergency room. The procedures plaintiff was to follow for his lower back pain were as follows: rest in bed; lie on a firm mattress; take over-the-counter medications as prescribed; and keep his knees bent utilizing a pillow or rolled blankets under them.
5. On July 12, 1993, plaintiff presented to Dr. Dorn reporting anxiety, pain in both groins, in the testicle area, and lower back. Dr. Dorn prescribed Naprosyn, Buspar instead of the Xanax plaintiff requested for his anxiety, and a chairback brace. Plaintiff had x-rays taken as well as an MRI. Both were negative. Dr. Dorn kept plaintiff out of work for four weeks, telling him to use a heating pad. Dr. Dorn's diagnosis was a groin strain and lumbosacral strain. The doctor prescribed Darvocet for pain and physical therapy at Cleveland Memorial Hospital three to four times a week. Plaintiff complied.
6. Plaintiff had a functional capacity evaluation several months after his injury. He was given a ten pound weight limit at that time.
7. Plaintiff was initially out of work from June 28 or 29, 1996 and returned to work with no restrictions on July 5, 1993. Plaintiff was terminated on July 9, 1993 for poor performance. On July 12, 1993, plaintiff was taken out of work by Dr. Dorn. On July 29, 1993, plaintiff was released to return to work with limitations of lifting no more than twenty pounds.
8. Plaintiff was referred to Dr. Chapman, whom he saw on March 23, 1994. Plaintiff was assigned a 10% permanent partial impairment rating to his back on March 23, 1994. Dr. Chapman prescribed physical therapy at the Rehab Center, eight hours a day, five days a week, for a one month period. On July 6, 1994, plaintiff commenced the program. After plaintiff completed the program on August 23, 1994, Dr. Chapman found plaintiff at maximum medical improvement for his myofascial pain and gave plaintiff a 5% permanent partial disability rating. Plaintiff had a thirty-five pound weight restriction.
9. Tamara Hite, with ConServCo, was assigned to plaintiff as a vocational rehabilitation counselor. Plaintiff underwent another functional capacity evaluation, the result of which indicated he was capable of doing light DOT classified work and lifting within the thirty-five pound restriction. Plaintiff generally complied with all the requests of his vocational rehabilitation counselor and worked diligently for ten months in order to secure employment. He was unsuccessful during all this time. He continued to receive temporary total disability compensation.
10. On August 29, 1994, Ms. Hite spoke with Scott Hayes of Bullek Corporation and found that there was a job available which involved setting up display tables and getting sales leads for that company. Mr. Hayes assured Ms. Hite that the proposed job was within plaintiff's functional capacity evaluation restrictions and that the tables which required lifting only weighed twenty-five pounds. Dr. Chapman approved the job based upon Mr. Hayes' assurances. Plaintiff commenced work but soon realized that the tables required to be set up, loaded and unloaded by him unassisted in a truck, were six feet long and had masonite tops, steel aprons and legs and weighed an estimated sixty-five pounds rather than twenty-five pounds. Plaintiff worked as a trainer and was assisted by Mr. Hayes for approximately three days. A week followed in which there was no work for plaintiff. Next plaintiff was assigned to work at a K-Mart show. After a three day attempt at work, plaintiff realized he could not continue lifting the tables because of the weight of the tables which exceeded his lifting restriction by thirty pounds as well as led to physical pain in his back.
11. Plaintiff's refusal to work for Bullek at the K-Mart show which involved lifting tables almost double the amount of his lifting restriction, was justified.
12. Subsequent to plaintiff's quitting the job with Bullek, defendants submitted a Form 24 which was approved by the Industrial Commission. Plaintiff's temporary total disability benefits were terminated. The granting of defendant's request for a Form 24 was inadvisable and incorrect.
13. Plaintiff's testimony is credible and convincing to the undersigned. He was consistent in reporting pain to his lower back, commencing immediately following his injury by accident on June 28, 1993 at Pardee Memorial Hospital and continuing through his care by Dr. Dorn and Dr. Chapman. Both Dr. Dorn and Dr. Chapman were sufficiently concerned about plaintiff's back pain to prescribe physical therapy and to ensure that plaintiff had diagnostic MRI's. Although the MRI's and x-rays did not indicate disc herniation or nerve root involvement, plaintiff was diagnosed with myofascial pain in the lumbosacral region of his back. Plaintiff was also given a permanent partial disability rating of 5% to his back after he reached maximum medical improvement. Plaintiff was unable to find any job except with Bullek during a ten month period. Plaintiff was unable to continue work with Bullek since August 29, 1994 and has been unable to earn wages in any employment since that date. Plaintiff will require additional vocational rehabilitation assistance in order to find employment.
14. Plaintiff has remained temporarily totally disabled and incapable of earning wages of any kind since he justifiably refused to continue his employment with Bullek Corporation. Plaintiff has not received any temporary total disability payments since they were terminated on August 28, 1994.
15. Approximately ten days prior to his accident, plaintiff was treated by his family physician for problems with nerves. The family physician referred plaintiff to Rutherford Mental Health for evaluation. Plaintiff was also on medication, including Xanax, for his nerve problems. Plaintiff was psychologically predisposed toward nervousness, anxiety and depression.
16. Plaintiff requested of Dr. Dorn and other physicians, medication in order to alleviate his anxieties. Dr. Dorn prescribed Buspar instead of Xanax.
17. Dr. Washburn, who worked with Dr. Dorn, referred plaintiff to Dr. R.J. Crummie at the Raintree Clinic on December 1, 1994, for psychiatric evaluation and treatment. Dr. Chapman, only at the specific request of plaintiff's attorney, but not of his own volition, suggested plaintiff receive psychiatric treatment.
18. Plaintiff was sent to Dr. Crummie for psychiatric evaluation based on representations made by plaintiff's attorney, Dr. Chapman did not prescribe psychiatric treatment for plaintiff when he last saw plaintiff in November of 1994. Plaintiff's work-related incident and resultant compensable injuries and workers' compensation claims were additional stresses which may have precipitated some additional anxiety and depression. However, there is no direct or causal relationship with his compensable injury.
19. Dr. Crummie prescribed Dilantin and Diazepam instead of Xanax for plaintiff. Plaintiff was diagnosed with ongoing anxiety exacerbated by psychological problems stemming from his inability to resolve his workers' compensation claim.
20. Many of the jobs for which Ms. Hite suggested plaintiff apply, required qualifications which he did not have, such as a college degree. Plaintiff was willing to relocate, if necessary, with his wife, to undertake work in another area of the state. No such job was located, however.
21. Defendants failed to present any sufficient evidence to overcome plaintiff's presumption of inability to secure employment to which he is entitled due to the Form 21 Agreement. Defendants have failed to prove that there were jobs within or without plaintiff's geographical area which he could have secured and at which he could have earned any wages or the same wages he was making in his original employment at Tri-Star Motorsports.
* * * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. As a direct and proximate result of plaintiff's work related injury by accident on June 28, 1993, plaintiff sustained an injury to his groin and lumbar spine which required medical treatment. N.C. Gen. Stat. § 97-2(6).
2. As a result of plaintiff's compensable injury by accident on June 28, 1993, plaintiff has been totally disabled from July 12, 1993 to the present and continuing. He was paid total disability benefits from July 12, 1993 until August 29, 1994. He is entitled to compensation at two thirds the amount of his average weekly wage while employed at Tri-Star Motorsports, beginning August 29, 1994 and continuing thereafter until defendants obtain permission from the Industrial Commission to cease payment of temporary total disability compensation. N.C. Gen. Stat. § 97-29; N.C. Gen. Stat. § 97-31. While plaintiff did receive a five percent permanent partial disability rating, the clearly more favorable election of remedies will be for continuing total disability.
3. Plaintiff's refusal to continue work with Bullek Corporation lifting tables in excess of his restriction of thirty-five pounds or less, was justifiable. Plaintiff has not been able to return to work or to locate work with defendant-employer or in any other type of work to which he is vocationally suited since he justifiably refused to work any additional time for Bullek. N.C. Gen. Stat. § 97-32.
4. Plaintiff is entitled to additional vocational rehabilitation services in order to assist him in locating employment within his restrictions. N.C. Gen. Stat. § 97-25.
5. Plaintiff's anxiety and depression pre-existed his compensable injury by accident. The psychological and mental conditions from which plaintiff suffers do not have a direct causal relationship with his compensable injury. Plaintiff is thus not entitled to reimbursement for his psychiatric and psychologic counseling with Dr. Crummie, nor is he entitled to be compensated for future counseling or reimbursed for medication prescribed by Dr Crummie. McCaslin v. Duke Power Co., I.C. File Nos. 705351 and 039849. See, also, Brewington v. Rigsbee AutoParts, 69 N.C. App. 168, 316 S.E.2d 336 (1984).
* * * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. For plaintiff's continuing total disability compensation, defendants shall pay plaintiff at two-thirds of his average weekly wage while employed at Tri-Star Motorsports from August 29, 1994 and continuing thereafter at the same rate until further Order of the Industrial Commission. Such amounts which have accrued shall be paid to plaintiff in a lump sum subject to a reasonable attorney fee approved hereinafter.
2. A reasonable attorney fee in the amount of 25% of the compensation due plaintiff under paragraph one (1) of this award is approved for plaintiff's counsel and shall be paid as follows: 25% of the compensation due plaintiff shall be deducted from the lump sum amount and paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be deducted from the sum due plaintiff and paid directly to plaintiff's counsel.
3. Defendants are not required to pay for plaintiff's psychiatric treatment to Dr. Crummie or for medication prescribed, past, present or future by Dr. Crummie.
4. Defendants shall provide and plaintiff shall accept vocational rehabilitation services to assist him in returning to productive employment.
5. Defendants shall bear the costs.
This case is ORDERED REMOVED from the Full Commission docket.
This the __________ day of ___________________, 1997.
 S/ ____________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ______________________ DIANNE C. SELLERS COMMISSIONER
S/ ______________________ THOMAS J. BOLCH COMMISSIONER
JHB/nwm 02/04/97